Gaston, J.
 

 After the issue had- been made up, on the petitition of Harris-and wife, at the October Term, 1826, of Rutherford County Court, we must understand that the court had revoked-the previous probate of the supposed will, and that the paper, which had been propund'ed as such, remained before it, to be established or rejected according to the determination of that issue. This-appears more clearly from the order made at the same term, which we find in the record accompanying the case, whereby William Slade, the present plaintiff, was appointed administrator
 
 pendente lite.
 
 The entry made at the July Term, 1827, 11 compromised, terms filed,” especially when taken in connection with the “terms” referred-'to,-whereby it is seen that the parties had:agreed upon a disposition of
 
 cCU
 
 the property of ihe'deeeased, we
 
 feel
 
 ourselves-justified in interpreting as a-withdrawal of the'alleged will by its propolinders, thereby authorizing the general grant of administration to-the widow at the subsequent-March Term. Thus far, vague and imperfect and in formal-ad are the several entries of record, we are enabled to give' them a reasonable construction with some degree of confidence, but when we come to the order or entry of March Term, 1839, under which the plaintiff undertakes' to make' out his title in, and constructive possession of,- the negroes carried away'by the defendants,-the hope of a satisfactory' construction vanishes. At this time the widow, to' whom a' general administration had-been granted, was dead. Thereupon', the same paper writing, containing the alleged will of the deceased, was again brought forward for probate, “which was objected to, and the validity of said will was caveated, and' an issue “
 
 devisavit vel non”
 
 made up thereupon.” — • This is intelligible, and-though much wanting in.precision', as not shewing by whom the alleged will was thus a second time propounded, or who contested its validity, or between' whom1 the issue was made up, is decisive, we think, that the
 
 *561
 

 allegation
 
 repropounding the will was
 
 admitted
 
 by court, that this allegation was met by counter aliegationsj and that the truth of the matter in contest was to be de-termtned by an issue under the direction of the court. — . What follows of the order is very much litre gibberish.— “Thereupon, after some .contestation, the court appointed William Slade administrator
 
 de bonis non testatoris
 
 of the estate of Gabriel Washburn, deceased, who entered into bond with good security. He prayed an order of sale ; granted, the property not to be removed out of the county.” If an explanation could be given of this entry by any co-tempora-neous act, such as the letters thereon issued or the bond then taken, none such is given; it must therefore be expounded without any aid of this kind. We have little difficulty in rejecting altogether the word “testatoris.” Perhaps it was a misprision for the word “ administratis,” but, if not, it is wholly unmeaning. Certainly, as yet there had been no sentence establishing a will of the deceased, and it sufficiently appears that the administration, whatever its character, was an administration “of the estate of Gabriel Washburn, deceased.” The order therefore remains one, appointing the plaintiff administrator
 
 de bonis non
 
 of that estate, and this is made at the same moment, when the coyrt entertains a contest respecting the alleged will of the deceased, and has no-issue made up to try that contest. Such an order must, we think, be held null.
 

 The power of the court to grant letters of administration exists only, when one has died without making any disposition of his goods. Such a grant is founded upon a sentence,express or implied, which is set forth in the letters, that the deceased has died intestate. A grant, therefore, of such an administration, founded upon a judicial declaration that the fact of testacy or intestacy is then
 
 sab lite
 
 in the court, is a legal absurdity. Upon the death of an original administrator, leaving some part of the goods, chattels and credits of the deceased unadministered and not fully disposed of, the authority of such administrator having expired, a supple-mentory grant of administration, still founded on that sen
 
 *562
 
 tence oí intestacy, issues to authorise and empower tbe grantee “to administer and faithfully dispose of the goods, chattels and credits left unadministered as aforesaid.” The g.ran|. 0f administration to the widow was upon its face good, because
 
 then
 
 there was no allegation or suggestion that the deceased had left a will. Until such allegation or suggestion was receivad by the court, it was
 
 per se
 
 a judicial declaration that he had died intestate. But when such an allegation was received’, which, perhaps, under the circumstances of the compromise and the wildrawal of the alleged will, when formerly propounded, might have been rejected, necessarily the sentence of intestacy was revoked, or at all events suspended. There was thus,- therefore, no' foundation on which to-rest? the supplementary grant.
 

 We have had occasion to see, as has been stated in the case of
 
 Sattewhite
 
 v
 
 Carson,
 
 decided at this term, that so' strictly was the power of the ordinary in granting administrations limitad to cases of ascertained intestacy, that it was for a long time held' that where a will was in contestation the ordinary could not grant special letters of administration
 
 pendente lite.
 
 This strictness was afterwards relaxed, because of the necessity that there shotild' be a-'
 
 temporary
 
 keeper of the goods of the deceased, while the controversy lasted. Nothing can be more conclusive to shew that a grant of general administration made during such a contest was altogether null. But it has been asked, if the court had authority to grant an administration thus limited,
 
 pen-dente lile
 
 — why may we not uphold the grant made to the
 
 extent
 
 of
 
 that authority ?
 
 This cannot be. The general appointment of an administrator, and the special appointment of an administrator
 
 pendente lite,
 
 do not differ from each other merely in the limited duration of the latter.- — ■ The offices conferred are in many respects different, having different powers and properties. We cannot convert one into the other. Besides there is an essential distinction in the effect of grants, conveyances, or other acts operating upon or by virtue of ownership in the grantor, and such as operate because of a power delegated by law to the grantor.
 
 *563
 
 With respect to .the former, they
 
 may
 
 be allowed to be fectual to the extent of the grantor’s dominion, and be held imperative as to all beyond it, but the latter are valid or invalid accordingly as they fall within or transcend the power of the grantor. The other matters in tne case, tending to shew that the conduct of the defendant is in violation of a family arrangement to which they were parties,, will have their just influence before a tribunal which has jurisdiction to enforce such arrangements. But they cannot effect the construction of the grant, under which the plaintiff claims to have been the
 
 legal
 
 possessor of the negroes that were of the deceased.
 

 It is exceedingly to be regretted, that, in the acts of courts, which exercise so important a jurisdiction in our country, we have to encounter at every term such absurd, irregular and defective entries, as almost to defy interpretation, and often to thwart what would seem to be the clear demands of justice and the best interests of the community. We greatly fear from our experience, that these evils are becomingmore frequent, and see not how they .can be lessened until the au-thorised registers of these .courts, who are intrusted with the momentous duty of recording their acts, shall be qualified by special training to express these acts in distinct, perspicuous and appropriate language.
 

 The judgment of the Superior Court is affirmed.
 

 Pee Curiam. Judgment affirmed.